# MACAFEE v. HIGGINS.

WILLS; WITNESSES, TESTAMENTARY CAPACITY; DEPOSITIONS; APPEALS.

1. Where a witness has fully disclosed his means of knowledge as to the mental condition of a testator and his reasons for reaching the conclusion that the testator was mentally incapable, it is not reversible error for the court to permit the witness to answer a question as to whether, from what he observed of the testator, he would say that the testator, at the time the will was executed, had sufficient mental capacity to understand and execute a valid deed or contract,— especially where the witness was not a lawyer, and it is not probable that the jury attached greater weight to his answer than it would if he had said that, in his opinion, the testator was of unsound mind at the time of the execution of the will.

2. Under § 1058, D. C. Code (31 Stat. at L. 1354, chap. 854), objections to questions and answers must be made at the time of taking a deposition, or within ten days after the return thereof; and objections made after the deposition has been read to the jury come too late.

3. A witness, called upon to testify as to the mental condition of a testator, who had worked in the same office with the testator, and who was familiar with the standing of the testator in the office, as to efficiency, is entitled to consider such knowledge in reaching a conclusion as to the testator's mental condition.

4. In order to obtain a reversal of a judgment refusing the probate of a will, after a trial upon issues involving the questions of testamentary capacity, undue influence, and fraud, in which there was a verdict for

the caveator, error must be shown by the caveatee in respect to all of
the issues, and not only one. (Following *Morgan* v. *Adams*, 29 App.
D. C. 198.)

No. 1873.    Submitted April 9, 1908.    Decided May 5, 1908.

HEARING on an appeal by the caveatee from an order of the
Supreme Court of the District of Columbia, denying the pro-
bate of a will after a trial by jury of issues to determine its
validity.                                        *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from an order denying the probate of the
will of J. Howard Larcombe, who died December 12, 1906,
leaving surviving him one daughter, Mrs. Mary Z. L. Higgins,
as his only heir at law and next of kin. The will was duly exe-
cuted, and reads as follows:

"I, J. Howard Larcombe, of the District of Columbia, do
make and publish and declare this to be my last will and testa-
ment; hereby revoking all other wills and testaments heretofore
made by me, and ratifying and confirming this, and none other
to be my last will and testament.

"First, I do will and direct that all my just debts be promptly
paid.

"Second, I do hereby give, bequeath and devise all my life-
insurance, personal, mixed, and real property, now owned or
after acquired, of which I die entitled, or seised and possessed,
to and unto Burton Macafee, with all my right title and interest
therein, to have and to hold the same, himself and his heirs for-
ever subject to the hereinafter named obligation:—that is to say,
the same to be his absolutely, to handle and to manage as he
sees fit, and to pay ninety per cent of the net annual income,
divided into two equal parts, to my children, one of those equal
parts to my daughter Mary Z. L. Higgins absolutely and free
from any interest, use or contro*ll* of any husband that she may
(*have*)x at any time have, and the other of these equal parts

to my son, Howard Shoch Larcombe, or to the widow of the said son, if his present wife survives him.

"Third, I request, but do not direct, that said Burton Macafee purchase the mortgage now upon and standing against the farm near Beltsville in the name of my deceased wife, provided my said son and daughter agree amicably to a division of said farm between them; and I also request him, Burton Macafee, to maintain my rights without compromise to the property in litigation in Pennsylvania.

"Fourth, I do hereby appoint and constitute Burton Macafee to be the executor of this my last will and testament, and do further will and direct that he shall not be required to give any bond for the performance of his duties as executor.—In case of the death of the said executor, Burton Macafee, or his refusal to act, then, and then only, I hereby appoint 'The Washington Loan and Trust Company' my executor.

"Fifth, I do hereby authorize my said executor to sell and dispose of my real estate, and to give a good and valid conveyance thereof, the purchaser in no way to see to the application of the purchase money.

"Sixth, I repeat, It is my will and intention that the provisions of this my last will and testament shall be effectual and sufficient to pass all rights *and* estate, real personal and mixed, of which I may be seised and possessed, or have any right or claim at the day and date of my death.  And further, I, J.-Howard Larcombe, do hereby declare my mind and will to be that if either of my children or the husband of my daughter, shall in any manner controvert any gift, devise disposesi-on or appointment herein by me made, or shall refuse to stand or abide by the same, or shall refuse or neglect to do or to execute any reasonable or proper writing or act for the confirming, establishing or carrying into execution of the same, then such son or daughter, or husband of my daughter, who controverts any gift, devise, disposition or appointment by me hereinbefore made, or who shall refuse or neglect to confirm the same, he, she, or the wife of him, shall be deprived of and lose all benefit and advantage of whatsoever is, in or by this will, or any part thereof

given, or appointed or settled in annual payment for his or her respective use and benefit.

"In witness whereof I have hereunto set my hand and seal this twenty seventh day of July, nin-teen hundred.

J. Howard Larcombe.    (Seal.)"

This will was anonymously sent by mail to the register of wills on December 14, 1906. Subsequently, on November 21, 1907, Burton Macafee, appellant herein, filed a petition for the probate of said will setting forth in said petition that the only personalty situated within the jurisdiction of the court consisted "of a few books, some little furniture, and a small amount of money." Thereupon a caveat was filed by the daughter, Mrs. Higgins, alleging mental incapacity and that the execution of the will was procured through the fraud and undue influence of said Macafee.

To this Macafee made answer, averring testamentary capacity and denying upon information and belief the charges of fraud and undue influence alleged against him in said *caveat.*

Thereupon the following issues were framed for trial by jury:

"1. Was the paper writing executed in due form of law as and for the last will and testament of J. Howard Larcombe?

"2. Was the said paper writing procured from the said J. Howard Larcombe by undue influence of Burton Macafee, or of any other person or persons?

"3. Was the said paper writing procured from the said J. Howard Larcombe by fraud of Burton Macafee, or of any other person or persons?

"4. Was the said J. Howard Larcombe, at the time of the execution of said paper writing, of sound and disposing mind and capable of executing a valid deed or contract?"

At the trial thirteen witnesses were produced by the caveator, almost all of whom were entirely disinterested, and all of whom testified to the mental incapacity of the testator prior to and at the time he executed said will. It appeared from their testimony that the testator, when he executed this will, was more

than eighty years old, and that he had become infirm in mind and body and incapable of transacting business. All these witnesses had been intimately acquainted with the testator, and their testimony was positive and convincing. There was testimony tending to establish the relation of attorney and client between testator and Macafee prior to and at the time of the execution of the will, and also testimony from which it might have been inferred that Macafee was instrumental in drawing said will. It further appeared that, at the time of the execution of the will, the testator owned a undivided interest in real estate in Blair County, Pennsylvania, 9 shares of stock in the Pennsylvania Railroad Company, 26 shares of stock in the Washington Gas-Light Company, and 62 shares of stock in the Metropolitan Coach Company; that he had a life interest in a farm near Beltsville, Maryland, and was the holder of a benefit certificate for $2,000 issued by the United Order of the Golden Cross, and in which his daughter, Mrs. Higgins, was named as beneficiary; that, upon the execution of the will, transfers of this property commenced to be made to appellant, which continued until within about seventeen months thereafter the appellant had acquired all of said property. Certain letters from Mrs. Higgins to appellant, in which she charged appellant with bad faith in his dealings with her father, and appellant's replies thereto, were introduced in evidence.

The record discloses that, at the close of the case, "counsel for caveatee said that he made no motion to direct a verdict on the issue of mental capacity as he supposed that there was sufficient evidence to go to the jury on that issue."

*Mr. Andrew Wilson* and *Mr. Noel W. Barksdale* for the appellant.

*Mr. Richard A. Ford, Mr. Guy H. Johnson, Mr. Ralph P. Barnard,* and *Mr. Wallace D. McLean* for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

Several specifications of error have been assigned, but only two of these relate to that of mental capacity. We will first consider these two assignments.

A witness named William J. Brooks testified by deposition that he was formerly appointment clerk in the Pension Bureau and assistant chief clerk in that office from 1897 to 1903, and had known the testator for twenty years; that, after 1897, he saw the testator almost daily, and from that time observed his physical weakness; that, from frequent conversations with testator, witness noticed his memory was failing, and that he could not center his mind upon any subject of conversation; and that "his mental and physical condition in July, 1900, from observation and conversation, had gotten decidedly worse." Thereupon witness was asked from what he observed of the testator "would he say that in July, 1900, he was capable and was of sufficient mental capacity to understand and execute a valid deed or contract." To this objection was interposed, which being overruled, an exception was noted. It is here contended by appellant that the court erred in permitting the witness to testify as to his opinion of testator's capacity to execute a deed or contract. Inasmuch as the testimony of the witness fully disclosed his means of knowledge as to the mental condition of the testator and his reasons for reaching the conclusion stated, we do not think it was reversible error for the court to permit an answer to this question. The witness was not a lawyer, and it is not probable that the jury attached greater weight to his answer than it would had he stated that in his opinion the testator was of unsound mind at the time of the execution of the will.

The second assignment of error relating to the issue of testamentary capacity challenges the action of the trial court in refusing to direct the jury to disregard the above opinion of the witness Brooks as to the mental condition of the testator, because, as appellant contends, it was based partly upon hearsay testimony. As above stated, the testimony of this witness was taken by deposition. During the taking of such testimony the

witness stated that about 1898 the office force was reduced and Larcombe was among the number recommended for dismissal; that witness protested "notwithstanding he (Larcombe) was unable to render any efficient service, because of the good service he had rendered the Union as a telegrapher in Alabama during the War." During his cross-examination by counsel for caveatee, the witness stated that his conclusion as to the mental capacity of the testator was not based entirely upon conversation with the testator, but upon the reports of the chief of his division, which constitute public records in the Pension Bureau, and which came to the witness in his official capacity as assistant chief clerk; and that his opinion was based on observation and conversation and Larcombe's "record as a clerk in the Pension Office."

There is no merit in this assignment. Section 1058 of the Code ([31 Stat. at L. 1354, chap. 854]) requires that objections to questions and answers must be noted at the time of taking a deposition, or within ten days after the return thereof. In this case no objection whatever was made until after the reading of the deposition to the jury. Moreover, the testimony shows that the witness was personally familiar with the standing of the testator in the office as to efficiency, which knowledge the witness was entitled to consider in reaching a conclusion on the question of mental capacity.

Inasmuch as practically all the direct testimony of the caveator related to the issue of testamentary capacity, which issue without error was submitted to the jury; and inasmuch as a careful examination of the record fails to disclose the improper admission of any testimony on the other issues which might have tended to the prejudice of the caveatee before the jury,—we find it unnecessary to consider the assignments of error relating to those issues. "The verdict on the issue of testamentary capacity being sufficient to support the judgment, it would not avail appellants if error could be shown on the other." *Morgan* v. *Adams,* 29 App. D. C. 198.

Finding no error requiring the verdict on the issue of testamentary capacity to be set aside and a new trial of that issue ordered, the judgment is affirmed, with costs.        *Affirmed.*